UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIGIOTTA'S FARMLAND PRODUCE AND
GARDEN CENTER, INC.,

                              Plaintiff,

        v.                                                    **DECISION AND ORDER**

PRZYKUTA, INC. d/b/a/ FRONTIER PRODUCE,                        05-CV-273S
*et al.*

                              Defendants.

## I.  INTRODUCTION

        Plaintiff commenced this action on April 20, 2005, alleging, among other things, that

Defendants Przykuta, Inc. d/b/a Frontier Produce ("Frontier Produce") and Ralph Paglia,

an owner, director and/or officer of Frontier Produce (together, "the Frontier Defendants")

violated the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. §§ 499a

*et seq.,* breached their fiduciary duties under PACA and breached Frontier's contract with

Plaintiff when they accepted deliveries of perishable agricultural commodities from Plaintiff,

subsequently sold or disposed of those commodities, and failed and refused to pay

Plaintiff.  After the Frontier Defendants failed to enter an appearance, answer Plaintiff's

Complaint or otherwise defend this action, Plaintiff obtained a  Clerk's Entry of Default on

September 26, 2005.  (Docket No. 29).

        Presently before this Court is Plaintiff's Motion for Default Judgment against the

Frontier Defendants, filed on September 28, 2005.  (Docket No. 31).  Plaintiff seeks an

order directing Defendants to make payment in the amount of $114,328.75 as demanded

1

in the Complaint, plus prejudgment interest, attorney's fees, costs and disbursements.[1]

For the reasons discussed below, this Court finds that an entry of default judgment is warranted.

## II. DISCUSSION

### A. Default Judgment Standard

A defendant's default is deemed to constitute a concession of all well-pleaded allegations of liability, but is not considered an admission of damages. Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Thus, while a finding of liability can be predicated solely on a facially valid complaint, damages must be proven before a final default judgment is entered. *See* Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Here, Plaintiff's Motion for Default Judgment is governed by FED. R. CIV. P. 55(b), which provides, in pertinent part, that:

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper . . . .

This language clearly indicates that  a district court is required to ascertain, with reasonable certainty, the existence of a valid claim and the amount of damages owed.

---

[1] In support of its motion, Plaintiff filed a memorandum of law; the Affidavit of Thomas N. Galbato, with exhibits, dated September 24, 2005; the Affidavit of Warren B. Rosenbaum, Esq., with exhibits, the Declaration of Paul T. Gentile, Esq., with exhibits relative to his fees, costs and disbursements; the Declaration of Warren B. Rosenbaum, Esq. with exhibits relative to his firm's fees, costs and disbursements; and a supplemental memorandum of law on the issue of attorneys' fees.  In addition, the Court considered an earlier Certification of Thomas N. Galbato, with exhibits, dated April 8, 2005.

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108, 111 (2d Cir. 1997); Wagstaff-EL v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990) (affirming vacatur of default judgment where underlying claims were facially invalid or utterly unsupported and appellant's calculation of damages was preposterous).   A district court can make these determinations without a hearing so long as it ensures that the pleadings and evidence submitted in support of the motion provide a basis for the  default judgment and the damages specified therein.   Transatlantic Marine, at 111.   The Second Circuit cautions that "defaults are generally disfavored and are reserved for rare occasions" so, when there is doubt about the propriety of default relief, "the doubt should be resolved in favor of the defaulting party."   Enron Oil Corp. v. Masonori Kiakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

**B.     The Validity of Plaintiff's Claims.**

Plaintiff's claims against Frontier Produce include: failure to maintain trust under PACA, dissipation of PACA trust assets, breach of fiduciary duty under PACA, breach of contract, and action on account stated (Counts I - V).   The claims against Ralph Paglia are: breach of fiduciary duty/conversion of PACA trust *res*, and dissipation of PACA trust assets (Counts VI and VII).   The Frontier Defendants, along with other current and former Defendants against whom default judgment is not sought are alleged to have participated in a fraudulent conveyance in violation of New York Debtor and Creditor Law § 273 (Count X).

In its Motion for Default Judgment, Plaintiff does not identify the specific claims upon which judgment is sought.   The supporting Affidavit of Thomas N. Galbato refers only to

3

PACA.  The supporting Affidavit of Warren B. Rosenbaum, Esq. does not refer to any particular claim, but appears to assume there is an entitlement to default judgment in the amount requested by Plaintiff based solely on the Frontier Defendants' failure to answer the Complaint.  As set forth above, the Court's obligation involves more than a rubber stamp.

### 1.    The PACA's Purpose and Requirements

PACA was enacted in 1930 to regulate the sale and marketing of produce in interstate commerce.  American Banana Co., Inc. v. Republic Nat'l Bank of N.Y., 362 F.3d 33, 36 (2d Cir. 2004); Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc., 336 F.3d 410, 413 (5th Cir. 2003).  In the early 1980s, Congress expressed concern for farmers and growers of perishable commodities, who, because of the need to sell their products quickly, were vulnerable to buyers whose creditworthiness was difficult to evaluate prior to a sale.  H.R. REP. NO. 98-543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406-407; Reaves, 336 F.3d at 413 (citing Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1066 (2d Cir. 1995)).  Congress amended PACA in 1984 to create a statutory trust in favor of produce sellers.  7 U.S.C. § 499e(c).  Under the 1984 provision, immediately upon a seller's delivery of perishable commodities, the commodities, products derived from the commodities, and the proceeds from their sale are to be held by the buyer in a nonsegregated "floating" trust for the benefit of unpaid suppliers who meet the applicable statutory requirements.  American Banana, 362 F.3d at 38.  If entitled to PACA protection, a seller's interest in the commodities and sales proceeds is superior to that of other creditors, including secured creditors.  Id. at 37.

To obtain the extraordinary protection of the trust provision, a seller must ordinarily require payment for the produce "within 10 days after the day on which the produce is accepted."  7 C.F.R. § 46.2(aa)(5).  "The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities."  *Id*., § 46.46(e)(2).  In addition to selling on the basis of cash or short-term credit, a seller must also give the buyer written notice of its intent to preserve its trust benefits as provided in 7 U.S.C. § 499e(c)(3) and (4).

A buyer who does not make a "full payment promptly"—*i.e.*, within the statutory 10 day period or an agreed to period of up to 30 days—commits a violation of the Act.  *Id*., § 46.2(aa).

### 2.	Plaintiff's Allegations and Supporting Documents Regarding Frontier Produce

In its Complaint, Plaintiff alleges that it sold perishable commodities to Frontier Produce on delivered price terms between November 9, 2004 and February 2, 2005 (Compl., ¶ 11), Frontier Produce inspected and accepted the commodities at the times of delivery (*Id*., ¶ 13), and subsequent to delivery, Plaintiff invoiced Frontier Produce (*Id*., ¶ 18).  Plaintiff further alleges that its invoices contained the specific notice authorized by 7 U.S.C. § 499e(c)(4).[2]

---

[2]  An unpaid seller loses the benefits of the trust unless it gives written notice to the buyer of its intent to preserve those benefits.  7 U.S.C. § 499e(c)(3).  One way it can do so is by including in its bill or invoice the statement "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."  7 U.S.C. § 499e(c)(4).

However, the statutorily authorized notice is but one step in establishing PACA entitlement.  As recently noted by the Second Circuit, "nothing in the text of PACA, in its legislative history, or in its implementing regulations indicates that PACA's super-priority was intended to benefit sellers who dealt in other than short-term credit in accordance with PACA's regulations."  American Banana, 362 F.3d at 38 (citations omitted); *see also*, 7 C.F.R. §§ 46.2(aa) and 46.46(e).  Because the Complaint does not provide any information regarding the terms of sale, this Court can not conclude, from the Complaint alone, that Plaintiff has a facially valid PACA claim.

The Court therefore turns to the Affidavit of Thomas N. Galbato, submitted in support of the Motion for Default Judgment, along with his earlier Certification submitted in support of Plaintiff's motion for a preliminary injunction.  Based on the attestations and documentation therein, this Court is satisfied that Plaintiff has alleged a supportable claim under PACA (Docket Nos. 5 and 31).  In his Affidavit, Galbato attests that "payment for the produce was due 10 days from the date of delivery" (Docket 31, ¶ 8).  Consistent with that attestation, the term stated on the attached invoice is "10 days."[3]

Thus, it appears that Plaintiff has taken the necessary steps to gain and retain its entitlement to the PACA statutory trust.  Plaintiff alleges that Frontier Produce has failed

---

[3]  This is somewhat inconsistent with his earlier Certification, where he attested that the 10 days ran from the date of the invoice, rather than the delivery date  (Docket No. 5, ¶ 13).  The Court is not troubled by this discrepancy in view of the attached invoices and statement indicating that Plaintiff billed Frontier Produce on a daily or almost daily basis and each invoice included the 10 day term.  To the extent there was any lag in time between delivery and billing, it does not appear to have been more than a day or two and, even assuming payment terms were linked to the invoice date, rather than the delivery date, there is no indication this would not have extended the payment terms beyond the regulatory 30 day maximum.  *See* Idahoan Fresh v. Advantage Produce, 157 F.3d 197 (3d Cir. 1998) (where plaintiff satisfied the notice requirement and did not agree to payment period over 30 days, it was not disqualified from a share in a pro-rata distribution of the statutory trust).

and refused to pay Plaintiff for the perishable commodities set forth in the invoices submitted to the Court, has failed to hold the commodities, derivatives or proceeds in trust, and has improperly expended trust assets (Compl., ¶¶ 17, 21, 24).  Accordingly, an entry of default judgment under PACA against Frontier Produce is appropriate.

Plaintiff has not expressly stated in its notice of motion or supporting affidavits that it is seeking default judgment on any ground other than PACA, nor has it provided briefing on any of its additional claims.[4]   Therefore, the Court sees no need to analyze the facial validity of the Plaintiff's non-PACA claims for relief.

### 3.	Plaintiff's Allegations Regarding Ralph Paglia

Plaintiff alleges that Ralph Paglia was an owner, director and stockholder of Frontier Produce, and exercised operational control over the corporation during the time the sales at issue were made (Compl., ¶ 45).  Plaintiff further alleges that Ralph Paglia breached his duty under PACA by failing to maintain and preserve trust assets for Plaintiff, by commingling Frontier Produce's assets with his own and by paying trust assets to persons or entities not entitled to trust protection (Id., ¶¶ 47, 54).  Finally, Plaintiff alleges that all of Frontier Produce's assets were sold on March 15, 2005 and the proceeds retained by Defendants Ralph and Mary Paglia (Id., ¶ 14).  In short, Plaintiff claims that Frontier Produce is assetless and that Ralph Paglia should be held individually liable.

"[I]ndividual shareholders, officers and/or directors of a corporation that is subject to PACA can face individual liability for breach of their fiduciary duty to PACA Claimants.

---

[4]  Plaintiff's two page memorandum of law does not include any briefing on its PACA claims either, except with regard to its entitlement to attorneys' fees and costs.  Plaintiff's failure to provide any briefing on the claims presented in its Complaint has substantially delayed the entry of a default judgment in this case.

Top Banana, L.L.C. v. Dom's Wholesale and Retail Center, Inc., 04 Civ. 2666 (GBD)(AJP), 2005 U.S. Dist. LEXIS 8976, at *15 (S.D.N.Y. May 16, 2005 (Report and Recommendation)), *adopted by* 2005 U.S. Dist. LEXIS 12848 (S.D.N.Y. June 28, 2005) (*citing* Golman-Hayden Co. v. First Source Produce, Inc., 217 F.3d 348, 351 (5th Cir. 2000); Hiller Cranberry Prods. v. Koplovsky, 165 F.3d 1, 8-9 (1st Cir. 1999); Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997)). Liability may be imposed on any individual who was in a position to control trust assets and allows the assets to dissipate. Dayoub Marketing, Inc. v. S.K. Produce Corp., 04 Civ. 3125 (WHP), 2005 U.S. Dist. LEXIS 26974, at *10 (S.D.N.Y. Nov. 9, 2005).

Under the standards applicable to default judgment, this Court accepts as true Plaintiff's allegations that Ralph Paglia was in a position to exert control over Frontier Produce so as to prevent the dissipation and/or conversion of trust assets, but failed to do so. Accordingly, the Court finds that Paglia breached his fiduciary duty as a PACA trustee and is personally liable for Frontier Produce's failure to preserve PACA trust assets for Plaintiff's benefit. Thus, entry of default judgment against Ralph Paglia is warranted.

## C.   Damages

As noted above, on a motion for default judgment, district courts must determine the amount of damages at issue with reasonable certainty. Specifically, this Court must assess whether Plaintiff's evidence sufficiently supports the damages claimed or whether a hearing on the issue is required. Credit Lyonnais, 183 F.3d at 155.

Here, the Affidavit and Certification of Thomas N. Galbato, along with the attached documentation, are sufficient to support the damages claimed by Plaintiff with reasonable

certainty.  In particular, Galbato's Certification dated April 8, 2005 includes a copy of each invoice upon which payment is sought and a corresponding cumulative statement dated April 8, 2005.  Galbato certifies that the statement reflects all invoices sent, adjustments made and payments received through that date.  *See* Sony Entm't, Inc.  v.  Pedestal Prods., 01 Civ. 4033 (RLC)(FM), 2002 U.S. Dist.  LEXIS 6662, at *6 (S.D.N.Y. Apr.  9, 2002) (where documentary evidence establishes statutory basis for and amount of damages and defendants fail to submit opposition papers, no purpose would be served by conducting a hearing).

Accordingly, on the basis of Plaintiff's submissions, the Court finds damages in the amount of $114,328.75.

## D.    Plaintiff's Contract-Based Claim for Interest and Collection Costs

Plaintiff relies on the following language in its invoices in seeking interest and collection costs:

> 1.5% Service Charge per month (18% annual charge) on all overdue accounts after 30 days.  Customer will assume all collection costs, including attorney's fees.

The Second Circuit has not addressed whether contractual claims for interest and attorney's fees are recoverable as part of a PACA trust claim.  However, at least two other Circuits have considered this issue and concluded that contractual interest and costs are recoverable in light of Congress' decision to allow "'full payment of the sums owing in connection with [commodities] transactions.'" Country Best v.  Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir.  2004) (*quoting* 7 U.S.C. § 499e(c)(2)); Middle Mountain Land & Produce, Inc.  v. Sound Commodities, Inc., 307 F.3d 1220, 1223 (9th Cir.  2002) (same).

The Southern District of New York has employed a similar analysis and determined that amounts due under contractual provisions for interest and attorney's fees become subject to the PACA trust together with the principle damages.  *See*, *e.g.*, Dayoub Marketing, Inc., 2005 U.S. Dist. LEXIS 26974, at *13-19; Top Banana, L.L.C., 2005 U.S. Dist. LEXIS 8976, at *5-11; Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 351 (S.D.N.Y. 1993).

Plaintiff does not indicate in its Complaint or its papers filed in support of default judgment that the interest and collection cost provisions it now seeks to enforce were discussed with and agreed to by the Frontier Defendants.  Absent any such allegations or proof, this Court presumes that these provisions were not bargained for between the parties, but were added by Plaintiff to its invoices.  The question, then, is whether these additional terms are enforceable on the record before this Court.

**1.     Interest**

To the extent interest payments are viewed as additional terms to an agreement between the parties, such terms are governed by N.Y. U.C.C. § 2-207(2):

> (2) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:
>
> (a) the offer expressly limits acceptance to the terms of the offer;
>
> (b) they materially alter it; or
>
> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

*See*, Country Best, 361 F.3d at 631 ("We hold that attorney fee and interest provisions can be enforceable as additional contract terms under the Uniform Commercial Code, and that

such fees and interest can be awarded as 'sums owing in connection with' perishable commodities transactions under the PACA statute."); *see also*, Top Banana, L.L.C., 2005 U.S. Dist. LEXIS 8976, at *10 n.1 (*citing* N.Y. U.C.C. § 2-207(2)).  The official comments 4 and 5 to U.C.C. § 2-207 expressly state that a contract is not materially altered by the addition of "a clause providing for interest on overdue invoices [or] fixing the seller's standard credit terms where they are within the range of trade practice," and such terms should be incorporated in the contract unless notice of objection is seasonably given.

The Frontier Defendants have not entered an appearance here and, on the record before this Court, there is no indication they ever objected to the terms of Plaintiff's invoices or that they made a purchase offer limiting acceptance to the terms stated therein. Similarly, no matter how onerous the terms may be, there is no indication that the service charge of 1.5% per month, or 18 % per annum, is outside the range of trade practice.  *See, e.g.*, Dayoub Marketing, 2005 U.S. Dist. LEXIS 26974, at *6 (awarding pre-judgment interest on unpaid invoices for produce sales at rate of 1.5% per month); Morris Okun, Inc., 814 F. Supp. at 351 (enforcing contractual interest rate of 1.25% per month on unpaid invoices in PACA case). Accordingly, this Court finds that Plaintiff is entitled to pre-judgment interest at the contract rate of 1.5 % per month on overdue accounts after 30 days.[5]

### 2.   Attorney's Fees

As noted above, Plaintiff's invoices call for "all collection costs, including attorney's

---

[5]  While this Court is troubled by the fact that Plaintiff appears not to have attempted to charge or collect interest on this account consistent with its invoice terms prior to commencing this action (Docket No. 5, ¶ 14, Ex. B), that fact alone does not constitute a waiver as a matter of law.  *See*, NetTech Solutions, L.L.C. v. ZipPark.com, 01 Civ. 2683 (SAS), 2001 U.S. Dist. LEXIS 14753, at *17-19 (S.D.N.Y. Sept. 20, 2001).

fees."   As with pre-judgment interest, contractual provisions for attorney's fees are enforcable under PACA.  Country Best, 361 F.3d at 631; Fishgold v. OnBank & Trust Co., 43 F. Supp. 2d 346, 351 (W.D.N.Y. 1999) ("Attorney's fees may be recoverable under PACA when the parties have so contracted . . . ."); E. Armata, Inc. v. Platinum Funding Corp., 887 F. Supp. 590, 594 (S.D.N.Y. 1995) ("Attorneys fees are not available under the PACA statute where a contractual basis for the fees is lacking.").

This Court finds that, absent any indication the Frontier Defendants objected to this term, the provision for attorney's fees is enforceable.  However, as with any case in which a district court must consider a statutory or contractual entitlement to attorney's fees, only such fees as are reasonable under the circumstances will be awarded.[6]

The calculation of reasonable attorney's fees begins with a determination of the "lodestar amount," which is "'calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Quarantino v. Tiffany & Co., 166 F.3d 422, 424 (2d Cir. 1999) (quoting Blanchard v. Bergeron, 489 U.S. 87, 94, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).  District courts typically perform the following steps in calculating the lodestar: 1) determine the reasonable hourly rate for each attorney; 2) exclude excessive, redundant or otherwise unnecessary hours, and 3) exclude hours dedicated to severable, unsuccessful claims.  Williamsburg Fair Hous. Comm. v. New York

---

[6]  In Dayoub Marketing, 2005 U.S. Dist. LEXIS 26974, at *6, the at-issue invoices included the same terms as are present here.  Because, as here, the provision for attorney's fees was without restriction and therefore imposed potentially limitless liability, the Dayoub Marketing court found that the term materially altered the parties' contract.  Following that determination to its logical conclusion, the term would be excluded from the contract and the plaintiff would have no right to recover fees.  Despite this result, the Dayoub Marketing court went on to award the plaintiff reasonable attorney's fees.  In this Court's view, the better course is to find the contractual provision for attorney's fees valid and enforceable absent a timely objection, and then award only such fees as are reasonable under the circumstances of the case, as it would in any other case.

City Hous. Auth., 76 Civ. 2125(RWS), 2005 U.S. Dist. LEXIS 5200, at *24 (S.D.N.Y. Mar. 31, 2005) (citations omitted).

More specifically, awards for legal fees are calculated in accordance with the "the prevailing market rates in the relevant community . . . ." Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (quoting Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 79, L. Ed. 2d 891 (1984)).  Moreover, "the district court must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Id. (quoting Blum, 465 U.S. at 896 n.11).  When the lodestar has been calculated, the court considers "subjective factors, such as the risk of litigation, the complexity of the issues, and the skill of the attorneys," New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1140 (2d Cir. 1983), and excludes hours that are "excessive, redundant, or otherwise unnecessary," Hensley v. Eckerhart, 461 U.S. 424, 434, 103 U.S. 1933, 76 L. Ed. 2d 40 (1983).

"Because attorney's fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court."  Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing Hensley, 461 U.S. at 437).  In all instances, the fee applicant has the burden of establishing the reasonableness of both the requested rate and the number of hours worked.  Catazano v. Doar, 378 F. Supp. 2d 309,  313 (W.D.N.Y. 2005).

### a.    Rates Prevailing in the Community

Plaintiff submitted declarations and time records in support of the request for fees

from Paul T. Gentile, Esq. on behalf of himself, and from Warren B. Rosenbaum, Esq. on behalf of himself and F. Michael Ostrander, Esq.. Mr. Gentile, whose office is in New York City, represents that he has practiced law for more than 35 years, regularly practices agricultural law, and that his billing rate of $300.00 per hour is representative of a reasonable rate in the community. He seeks 43.8 hours of time for a total of $13,140.00. Mr. Rosenbaum, whose office is in Rochester, New York, represents that he has been admitted to practice for more than 30 years, handles complex commercial litigation matters, and that his billing rate of $250.00 per hour is representative of the community. He further declares that F. Michael Ostrander, an associate attorney in his firm, has been admitted to practice since February 24, 2005 and the billing rate for his services is $175.00 per hour, which in Rosenbaum's opinion is reasonable. Mr. Rosenbaum states that he and Ostrander spent 78.6 hours of time for a total of $14,658.00.[7]

Although attorneys Gentile and Rosenbaum have offered nothing more than their own opinion as to the reasonableness of their respective rates,[8] this Court is familiar with the rates charged in this community[9] by attorneys in similar practice areas and with similar

---

[7] Mr. Rosenbaum left it to the Court to wade through individual monthly invoices to determine the respective hours spent by him and his associate. It appears from the firm's invoices that Mr. Rosenbaum billed for 19.6 hours of his time and 59 hours of Mr. Ostrander's time. No hourly rates appear on the invoices, but multiplying those hours by $250.00 and $175.00 respectively yields a total of $15,225.00, not the $14,658.00 Plaintiff was actually billed for services. Thus, it appears that at least one attorney's rate was something less than is now sought.

[8] The party seeking an award of fees should submit evidence supporting the rates claimed. Hensley, 461 U.S. at 433.

[9] Attorney Gentile does not indicate whether his opinion as to the reasonableness of his rate relates to the community where his office is located or the Western District of New York. The prevailing community the district court must consider is the district in which the court sits, Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994)—in this case, Buffalo and Rochester, New York. It is particularly appropriate to apply rates for this community in this case where Plaintiff does not indicate it was unable to locate counsel with relevant expertise in this district.

experience.  Based on that familiarity, the Court finds an hourly rate of $250 for attorneys Gentile and Rosenbaum to be reasonable.  Compensation for attorney Gentile is therefore reduced by $50.00 per hour.  Moreover, this Court finds a rate of $125.00 per hour to be in keeping with rates in this community for newly admitted attorneys, such as attorney Ostrander, who was admitted to practice just two months prior to the commencement of this action.  Accordingly, Plaintiff's request for fees for Ostrander is also reduced by $50.00 per hour.

### b.    Hours Reasonably Expended

When Plaintiff commenced this action, it also named Mary Paglia, Great American Food Service, Inc., Ben Paglia and Douglas Ward as Defendants.[10]  The action was later stayed as against Mary Paglia, a purported owner, director or person with financial authority at Frontier Produce, pursuant to the United States Bankruptcy Code, 11 U.S.C. § 362(a).   The Great American Defendants are not alleged to have had any ownership interest or control over Frontier Produce or to have engaged in any violation of PACA.

On September 21, 2005, Plaintiff stipulated to a voluntary dismissal without prejudice as to the Great American Defendants, prior to their filing of an answer.   Plaintiff moved for default judgment on September 28, 2005.  Following the show cause hearing on Plaintiff's Motion for Default Judgment, this Court directed Plaintiff to file a memorandum "providing authority for an award of attorney's fees for work relating to parties other than those against whom default judgment is sought."  Docket No. 37.

In response, Plaintiff stated that it voluntarily dismissed the Complaint as to the

---

[10]  The latter three are together referred to as the "Great American Defendants."

Great American Defendants so it could obtain discovery from them, and further, that it might reinstate the action against these Defendants once it obtains the deposition of and document production from Mary Paglia relative to Frontier Produce's PACA trust assets. Docket No. 38, pp. 2-3.  Plaintiff does not explain why it had to bring and then dismiss a suit against the Great American Defendants to obtain discovery from them or why it needs discovery from the Great American Defendants when Mary Paglia is believed to have control over the relevant Frontier Produce financial documents.  *Id*.

Furthermore, Plaintiff did not brief the issue requested by the Court, but instead briefed the issues of contractual entitlement to attorney's fees under PACA generally, and the individual liability of Ralph Paglia.  *Id*., pp. 4-5.  Plaintiff concluded by stating that all "Defendants had a statutory duty to maintain the trust and make full payment promptly" and "there is nothing to distinguish some collection efforts from others."  *Id*., p. 6.  However, this Court is not persuaded where the Complaint does not allege that any of the Great American Defendants had a statutory duty vis-a-vis the Frontier Produce PACA trust.

In light of Plaintiff's dismissal of the Great American Defendants pre-answer, even though the dismissal was without prejudice, this Court finds that recovery for attorney's fees related to these Defendants is not reasonable.

"[W]hen there is a fee application containing excessive hours, it is within the discretion of the district court to make an across the board percentage reduction." LaBarbera v. J.E.T. Resources, Inc., 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005).  Courts in this Circuit have long recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in a fee application.  *See*, *e.g.*, New York State Ass'n for Retarded

Children, 711 F.2d at 1146; DCH Auto Group (USA) Inc. v. Fit You Best Auto., Inc., CV-05-2973 (NG) (JMA), 2006 U.S. Dist. LEXIS 4298, at *25-26 (E.D.N.Y. Jan. 10, 2006) (35% reduction) Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (15% fee reduction).

A percentage cut is a practical means of trimming excess or otherwise unreasonable hours from an application where, as here, the attorneys' time records are insufficiently detailed for the Court to ascertain, with any degree of certainty, what time devoted to "telephone conference," "preparation of motion papers," "preparation of declaration," "review of letter from Tommy re: fact specific matters," "legal research" and other such non-specific entries relates to which Defendant(s). Sabatini, 190 F. Supp. 2d at 522 (citations omitted). Having reviewed the time records submitted, including those time entries that are sufficiently detailed to attribute them to a particular defendant(s), I find that a 20 percent across the board reduction in time is warranted as follows:

| Attorney | Hours | Reduction | Rate | Total |
|---|---|---|---|---|
| Gentile | 43.8 | 35.0 | $250 | $8,750.00 |
| Rosenbaum | 19.6 | 15.7 | $250 | $3,925.00 |
| Ostrander | 59.0 | 47.2 | $125 | $5,900.00 |

Accordingly, Plaintiff's request for attorney's fees is granted in the amount of $18,575.00.

### 3.    Other Collection Costs

Plaintiff was billed by its attorneys for various costs and disbursements in the amount of $1,613.95. Upon review, these costs include: filing fee, photocopies, postage, express mail services, telecommunication services, process service fees, electronic

research, and administrative costs.  This Court finds that, with the exception of charges for computer research and unspecified "administrative costs," the costs billed to Plaintiff are compensable.  *See* United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996) ("computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost"); King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004) ("private market attorney fee rates reflect overhead costs like electronic research, just as they would reflect the cost of case reporters and other necessary books purchased for a law firm's library"); Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable out-of-pocket disbursements for items such as photocopying, travel and telephone costs are [compensable, but] routine office overhead . . . must normally be absorbed within the attorney's hourly rate.") [emphasis supplied].

The amounts charged for electronic research and unidentified "administrative costs" are $27.96 and $83.00, respectively.  Accordingly, costs are awarded in the amount of $1,502.99.

## III.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment against Defendants Przykuta, Inc., d/b/a Frontier Produce and Ralph Paglia is granted.  Plaintiff is awarded $114,328.75 in damages, pre-judgment interest at a rate of 1.5 % per month on overdue accounts after 30 days, attorney's fees in the sum of $18,575.00, and costs of $1,502.99.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Default Judgment (Docket No. 31) is GRANTED.

FURTHER, that Plaintiff is awarded $114,328.75 in damages.

FURTHER, that Plaintiff is awarded attorney's fees and costs in the amount of $20,077.99.

FURTHER, that Plaintiff is awarded prejudgment interest at the rate of 1.5% per month on overdue accounts after 30 days.

SO ORDERED.

Dated:  July 13, 2006
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge